FILED
2022 FEB 22 AM 10:45
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| IFIT INC.,<br><br>         Plaintiff,<br>v.<br><br>PHILIP ALISTER WILLIAMS and WILBERT QUINC MURDOCK,<br><br>         Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 1:21-cv-00006-JNP-DBP<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Dustin B. Pead |

This action stems from a patent dispute between Plaintiff iFIT Inc. ("iFIT" or "Plaintiff")[1] and Defendants Philip Alister Williams ("Williams") and Wilbert Quinc Murdock ("Murdock") (collectively, "Defendants").

Before this court are four motions. First, Defendants moved to dismiss iFIT's original complaint on the basis of lack of personal jurisdiction and lack of subject matter jurisdiction [ECF No. 27]. Second, Williams moved to dismiss iFIT's amended complaint as to himself on the same bases [ECF No. 46]. Third, Williams moves to sever iFIT's case against him from the case against his co-defendant, Murdock [ECF No. 47]. Fourth, iFIT moves for an entry of default

---

[1] Plaintiff initially filed this lawsuit under the name ICON Health & Fitness, Inc. However, on August 9, 2021, ICON Health & Fitness, Inc. officially changed its name to iFIT Inc. by amending its certificate of incorporation. ECF No. 59. For this reason, the court now refers to Plaintiff as iFIT.

judgment against Murdock[2] [ECF No. 50]. For the following reasons, the court dismisses the case against both defendants and denies the other motions as moot.

## BACKGROUND

iFIT is a fitness company that sells a variety of fitness equipment, including the Nordic Track-branded S22i Studio Cycle product at issue in this case. It is a Delaware corporation with its principal place of business in Logan, Utah. Williams and Murdock are part-time inventors and patent holders who reside in New York. Williams is a full-time graduate student. Neither Defendant participates in any business endeavors related to their patents. Defendants own four patents at issue in this case: the '165 patent, the '964 patent, the '129 patent, and the '558 patent. *See* ECF No. 2, at 2. Broadly speaking, these patents pertain to integrating sports equipment—in several instances, specifically golf equipment—to a computer or to the internet.

On December 3, 2020, Defendants sent iFIT a letter warning of "possible patent infringement" by iFIT. ECF No. 32-1. iFIT did not respond to the letter. On January 6, 2021, iFIT filed this lawsuit against Defendants, seeking a declaratory judgment of noninfringement. iFIT later amended its complaint to additionally allege that Defendants' letter violated Utah's Bad Faith Patent Infringement Letters Act ("Utah's Bad Faith Statute"). UTAH CODE §§ 78B-6-1901 to -1905.

Defendants were initially represented by counsel and filed a joint motion to dismiss on May 10, 2021. iFIT responded by amending its complaint on May 24, 2021. Defendants' counsel moved to withdraw due to nonpayment of fees on July 6, 2021. After counsel withdrew, Williams moved pro se to file a nearly identical motion to dismiss on August 1, 2021. The only difference

---

[2] iFit filed two motions for entry of default. *See* ECF Nos. 50, 60. ECF No. 60 appears to request a default certificate, whereas ECF No. 50 requests a default judgment. The Clerk of Court granted a default certificate as requested by ECF No. 60. But because the court finds that it has no personal jurisdiction over Murdock, the court DENIES as MOOT ECF No. 50.

is that Williams moved only to dismiss the case against himself, not against Murdock. Williams also filed a motion to sever the case against him from the case against Murdock. Murdock has not filed anything in this case since iFIT amended its complaint. Accordingly, iFIT moved for entry of default as to Murdock on August 10, 2021.

## LEGAL STANDARD

In a patent infringement case, including one seeking a declaration of noninfringement, Federal Circuit law controls jurisdictional questions because "the jurisdictional issue is intimately involved with the substance of the patent laws." *Avocent Huntsville Corp. v. Aten Int'l Co., Ltd.*, 552 F.3d 1324, 1328 (Fed. Cir. 2008) (citation omitted). And "[w]here a suit involves both patent and non-patent claims, Federal Circuit law regarding due process also applies to the question of personal jurisdiction on non-patent claims if the resolution of the patent infringement issue will be a significant factor in determining liability under the non-patent claims." *Breckenridge Pharm., Inc. v. Metabolite Lab'ys, Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006) (citation omitted).

Plaintiffs bear the burden of establishing that a court has personal jurisdiction over a defendant. *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011). When the issue of personal jurisdiction "is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing." *Id.* At the motion to dismiss stage, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Albers v. Bd. of Cnty. Comm'rs*, 771 F.3d 697, 700 (10th Cir. 2014) (citation omitted).

**DISCUSSION**

As a preliminary matter, the court treats the original motion to dismiss as to both Williams and Murdock as the operative motion to dismiss. "[O]rdinarily an amended complaint supersedes the original complaint and renders it of no legal effect," meaning the amended complaint would render moot any motion to dismiss aimed at the original complaint. *Bird v. Easton*, 859 F. App'x 299, 302 (10th Cir. 2021) (unpublished) (citing *Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517 (10th Cir. 1991)). But where an amended complaint suffers from the same alleged defects as the original complaint "defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending." *Id.* (quoting 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1476 (3d ed. 2021)). Thus, "[i]f some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Id.* (citation omitted).

Here, the amended complaint added an additional claim under Utah's Bad Faith Statute. But, as discussed below, the amended complaint suffers from the same jurisdictional defects as the original complaint. Therefore, the court considers the original motion to dismiss from both Defendants as being addressed to the amended pleading. Accordingly, the subsequent motion to dismiss filed by Williams alone is DENIED as MOOT.

I.  **MOTION TO DISMISS**

Defendants moved to dismiss the complaint for lack of personal jurisdiction and lack of subject matter jurisdiction. The court first addresses Defendants' personal jurisdiction argument.

Murdock and Williams argue that this court does not have personal jurisdiction over them. Defendants contend that the act of sending an infringement letter to iFIT in Utah, without

4

more, is insufficient to establish the minimum contacts necessary for this court to exercise personal jurisdiction. iFIT responds that because the infringement letter violates Utah law, it is sufficient to justify the exercise of personal jurisdiction over Defendants.

Personal jurisdiction requires a two-part inquiry: whether exercising personal jurisdiction comports with (1) a state's long-arm statue and (2) principles of constitutional due process. Because Utah's long-arm statute "should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause," the court need only address whether the exercise of personal jurisdiction over Defendants comports with constitutional due process. *See* UTAH CODE § 78B-3-201(3).

For the court to exercise personal jurisdiction, due process requires that "the nonresident defendant must have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction may be either general or specific. iFIT concedes that Defendants are not subject to general personal jurisdiction in Utah. ECF No. 53, at 6. Therefore, the only issue is whether the court may exercise specific personal jurisdiction over Defendants based on the cease-and-desist letter.

### A. *Specific Personal Jurisdiction*

Under specific personal jurisdiction, a district court can hear claims against a defendant only where that defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985) (citation omitted). Once a plaintiff has met this burden, "the defendant may point to other factors 'to determine whether the assertion of

personal jurisdiction would comport with fair play and substantial justice.'" *New World*, 859 F.3d at 1037 (quoting *Burger King*, 471 U.S. at 476). In short, there are three prongs to establish specific personal jurisdiction: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Id.* (citation omitted).

### i.    Minimum Contacts

The first two factors—that the defendant purposefully directed its activities at the forum and that the plaintiff's claim arose out of those forum-related activities—are satisfied when a defendant sends a cease-and-desist letter into a forum and that letter gives rise to a subsequent declaratory judgment action. *See New World*, 859 F.3d at 1037 ("This court has acknowledged that the defendant purposefully directs his activities at residents of the forum when the defendant sends a cease and desist letter to a potential plaintiff in that particular forum. And a subsequent declaratory judgment action by that potential plaintiff arises out of or relates to the defendant's activity—namely, the cease and desist letter." (citation omitted)).

iFIT easily satisfies the first two factors. It alleges that Defendants sent an infringement letter into the forum, and that its suit for declaratory judgment arose out of that activity. If proven, these allegations establish Defendants' sufficient minimum contacts with the forum. *See id*.

### ii.   Reasonableness and Fairness

The court next turns to the third factor—whether exercising personal jurisdiction over Defendants would be reasonable and fair. Traditionally, the Federal Circuit has held that, due to "policy considerations unique to the patent context," sending an infringement or cease-and-desist

6

letter alone, without more, is not a fair or reasonable basis for exercising personal jurisdiction. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003); *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1324 (10th Cir. 2019) ("[W]e agree with the Federal Circuit that a single cease-and-desist letter is insufficient to confer jurisdiction in a declaratory judgment action . . . ." (citation omitted)). As the seminal case *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360-61 (Fed. Cir. 1998), explained, this is because "[p]rinciples of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum."

But the Federal Circuit recently clarified its *Red Wing* decision in *Trimble, Inc. v. PerDiemCo LLC*, 997 F.3d 1147 (Fed. Cir. 2021). It noted that the Supreme Court cases that postdate *Red Wing* "have made clear that the analysis of personal jurisdiction cannot rest on special patent policies." *Id.* at 1154. Accordingly, the *Trimble* court expressly rejected any reading of *Red Wing* that would dictate a general rule that patent demand letters can never create specific personal jurisdiction for policy reasons. *Id.* at 1156. In reevaluating *Red Wing* in light of non-patent-specific personal jurisdiction rules, the Federal Circuit looked to "the Supreme Court's generalized instruction to treat 'isolated or sporadic [contacts] differently from continuous ones.'" *Id.* (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1028 n.4 (2021)). In the end, the Federal Circuit found that "*Red Wing* remains correctly decided with respect to the limited number of communications involved in that case." *Id.*

The nature of the contacts in *Trimble* and *Red Wing* stand in stark contrast. In *Trimble*, the plaintiff and defendant exchanged twenty-two communications over a period of three months. *Id.* These communications were increasingly hostile, beginning with a letter from the defendant that had attached an unfiled complaint and escalating to the point that the defendant threatened to sue

the plaintiff in a particular district and identified the counsel it planned to use for that purpose. *Id.* at 1156-57. The defendant's "extensive number of contacts with the forum in a short period of time" led the court to find personal jurisdiction in *Trimble*. *Id.* at 1157.

In contrast, the *Red Wing* defendant's total contacts with the forum consisted of sending three warning letters to the forum and having licensees who did business in the forum. The *Trimble* court juxtaposed the two cases succinctly:

> Unlike *Red Wing*, [the defendant's] actions [in *Trimble*] went far beyond 'solely . . . informing a party who happens to be located in [the forum] of suspected infringement.' Rather, [the defendant] amplified its threats of infringement as the communications continued, asserting more patents and accusing more of [plaintiffs'] products of infringement. Indeed, [defendant] went so far as to identify the counsel it retained to sue [plaintiffs] and the venue in which it planned to file suit. [Defendant's] twenty-two communications over the course of about three months fall well outside the 'sufficient latitude' we sought to grant patentees 'to inform others of [their] patent rights without subjecting [themselves] to jurisdiction in a foreign forum' . . .

*Id.* at 1157 (quoting *Red Wing*, 148 F.3d at 1361-62).

The communications in this case are "isolated" and "sporadic," not "continuous." *Ford*, 141 S. Ct. at 1028 n.4. Thus *Red Wing*—and not *Trimble*—provides the most useful analogy. In fact, Defendants actually engaged in *less* contact with the forum state here than even in *Red Wing*. The defendant in *Red Wing* sent three separate demand letters, with several offers to enter into license negotiations with the plaintiff; Williams and Murdock sent a single letter to iFIT in Utah. *See* 148 F.3d at 1361. Unlike the *Trimble* letters, Defendants' letter contained no unfiled complaint. And Defendants never attempted to follow up to assert more patents or accuse additional products of infringement. Nor did Defendants ever raise any specific threats of litigation. Instead, the single letter simply notified iFIT of "possible patent infringement" and requested a "fair disposition of this matter." ECF No. 33-1.

8

And, beyond the letter, there is no evidence that Defendants had any other contact with the forum state that would make exercising personal jurisdiction here reasonable. In particular, the Federal Circuit has held that activities related to enforcement of the relevant patent can support personal jurisdiction. *See Trimble*, 997 F.3d at 1155-56. Specifically, "hiring an attorney or patent agent in the forum state to prosecute a patent application that leads to the asserted patent" or "physically entering the forum to demonstrate the technology underlying the patent to the eventual plaintiff, or to discuss infringement contentions with the eventual plaintiff" would support personal jurisdiction. *Id.* at 1155 (citations omitted). Any "extra-judicial patent enforcement targeting business activities in the forum state" would further qualify. *Id.* at 1156 (citation omitted). Exclusive licensing agreements with respect to the patent in the forum state could also support personal jurisdiction. *Id.* at 1155-56; *see also Silent Drive*, 326 F.3d at 1202 ("Exclusive license agreements with respect to the patents at issue with residents of the forum . . . have, at least in some circumstances, been held sufficient to confer personal jurisdiction."). But Williams and Murdock have not engaged in any further enforcement actions in Utah. Nor have they engaged in any exclusive licensing agreements with respect to the patent in Utah that might impose enforcement obligations on a party doing business in Utah. Therefore, locating Defendants' actions on the continuum between *Red Wing* and *Trimble*, *Red Wing* clearly governs.

iFIT counters that the letter in this case cannot be compared to the letters in *Red Wing*. Specifically, iFIT contends that, because Defendants' cease-and-desist letter allegedly violates Utah's Bad Faith Statute, the letter is not a protected "effort[] to give proper notice of [Defendants'] patent rights" and thus the court should exercise personal jurisdiction here. *See Red Wing*, 148 F.3d at 1361. The only case that either party cites where a court adjudicated a

9

personal jurisdiction dispute involving claims arising under a patent-troll statute like the Utah Bad Faith Statute is *GPS Insight LLC v. PerDiemCo LLC*, No. CV-19-0513-PHX-MTL, 2020 WL 3129228 (D. Ariz. June 12, 2020). In that case, the district court found that it did not have personal jurisdiction where "the defendant sent a single letter with no additional actions that caused harm to be realized in [the forum state]." *Id.* at *3. The court dismissed the plaintiff's argument that personal jurisdiction attached due to the defendant's purportedly illegal conduct, and instead found that "a single letter, doing nothing more than putting a party on notice of potential infringement and offering a licensing opportunity, does not give rise to specific jurisdiction," even to enforce Arizona's patent-troll statute. *Id.* In sum, the district court refused to alter its jurisdictional analysis in the face of a state patent-troll statute. *Cf. Key Source Int'l v. CeeColor Indus., LLC*, No. C 12-01776 WHA, 2012 WL 6001059, at *2 (N.D. Cal. Nov. 30, 2012) (rejecting argument that when a patent troll sends letters to a state, it subjects itself to personal jurisdiction in that state); *Overstock.com, Inc. v. Furnace Brook, LLC*, 420 F. Supp. 2d 1217, 1218 (D. Utah 2005) (refusing to apply different standard for personal jurisdiction to patent trolls).

      iFIT criticizes the *GPS Insight* court's logic by arguing that it failed to take into account that the pre-litigation letter was not a "normal cease and desist letter" but rather was "abusive, tortious or otherwise wrongful." *See Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006). In effect, iFIT attempts to argue that, because Defendants' letter is allegedly tortious, the court *must* have personal jurisdiction. But iFIT cannot skirt jurisdictional requirements simply by amending its complaint to allege that Williams and Murdock violated a Utah law. Regardless of whether Defendants' letter violates Utah's statute, personal jurisdiction is, at bottom, a separate constitutional inquiry.

Two of the factors that the Supreme Court has identified as relevant to whether asserting jurisdiction comports with fair play and substantial justice weigh particularly against jurisdiction. *See Trimble*, 997 F.3d at 1157-59 (considering the factors listed in *Burger King* and *World-Wide Volkswagen*[3]). Utah, of course, "has a substantial interest in protecting its residents from unwarranted claims of patent infringement." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1356 (Fed. Cir. 2017) (citation omitted). But "[w]hen evaluating whether the exercise of personal jurisdiction would comport with fair play and substantial justice, the Court has explained that the 'primary concern' is assessing 'the burden on the defendant.'" *Trimble*, 997 F.3d at 1157-58 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)). Here, the "practical problems resulting from litigating in the forum" are serious. *Id.* Murdock and Williams are pro se inventors. There is no indication that Murdock or Williams regularly conduct business anywhere near the forum (or anywhere at all). Williams is a full-time doctoral student for whom this lawsuit has caused "a severe financial burden." ECF No. 47, at 2. Considering Defendants' pro se status and the apparent disparity in legal resources between the parties (iFIT is represented by attorneys from two different firms while Defendants have no representation), the burden appears heavy on Defendants to continue litigating the case across the country in Utah. [4]

---

[3] The *Burger King/World-Wide Volkswagen* factors include (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiffs' interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Trimble*, 997 F.3d at 1157-79.

[4] This case contrasts with *Trimble*. There, the court found that the evidence showed that the minimal burden on the defendant to litigate in the plaintiff's chosen forum supported the reasonableness of personal jurisdiction. 997 F.3d at 1158. As evidence, the *Trimble* court noted that the defendant was located in Washington D.C., making it equally as burdensome to litigate in California (the plaintiff's preferred forum) and Texas (the defendant's preferred forum). *Id.* Additionally, the defendant in *Trimble* had already engaged in lawsuits in another foreign forum.

In addition, settlement would clearly bring the "most efficient resolution" of this matter. *Id.* at 1153. Thus, discouraging parties from sending patent infringement notification letters—which can serve as the first step towards settlement—into foreign fora certainly contravenes the due process concern for "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). And finally, neither Defendant has ever taken any action to avail himself of the benefits and protection of Utah laws. *See Trimble*, 997 F.3d at 1159 ("[T]he same body of federal patent law would govern the patent noninfringement claim irrespective of the forum." (citation and alteration omitted)). In short, the exercise of personal jurisdiction in this case would not comport with fair play and substantial justice.

In sum, it is unreasonable to find that a single letter—one that makes no threat of litigation nor any demand for compensation but rather simply notifies the recipient of possible patent infringement—would cause Defendants to reasonably anticipate that they might be haled into court in a foreign forum, even in the face of Utah's Bad Faith Statute. Accordingly, exercising personal jurisdiction over Defendants would flout the "constitutional touchstone" of foreseeability—that, in order to satisfy due process, the defendant "should reasonably anticipate being haled into court" in the forum.[5] *Burger King*, 471 U.S. at 474 (citation omitted). Until the

---

*Id.* And finally, the court found that "the nature of [defendant's] primary business of asserting its patents requires it to litigate far from [defendant's] Washington office." *Id.* In contrast, here, there is no allegation that Defendants have ever engaged in litigation in another forum, nor that Defendants' primary business consists of asserting patents.

[5] iFIT tries to further analogize this case to *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938 (8th Cir. 2001). iFIT argues that in that case, the court found personal jurisdiction after defendants "purposely direct[ed] their fraudulent communications at residents of Nebraska." *Id.* at 943. But the analogy fails because *Oriental Trading* resembles *Trimble*, not *Red Wing*, in terms of the scope of the contacts. In *Oriental Trading*, the defendants "made numerous phone calls and faxes and sent many invoices to [plaintiff] in Nebraska." *Id.* These extensive contacts—

Federal Circuit provides guidance otherwise, this court will adhere to the Federal Circuit's finding in *Trimble*: "*Red Wing* remains correctly decided with respect to the limited number of communications involved in that case." *Trimble*, 997 F.3d at 1156. This case involves an even more limited number of contacts—thus exercising personal jurisdiction here would defy the Federal Circuit's instructions. *See Silent Drive*, 326 F.3d at 1201 (holding that Federal Circuit law is binding on the issue of personal jurisdiction in a declaratory action for patent invalidity and noninfringement).

### B. Other Bases for Dismissal

Defendants also argue that the court lacks subject matter jurisdiction over this case because there was no affirmative act establishing adverse legal interests between the parties nor an ongoing case or controversy between the two parties. Because the court does not have personal jurisdiction over the Defendants, it need not address those issues.

## II. MOTION TO SEVER

Because the court dismisses the case for lack of personal jurisdiction, Williams's motion to sever is DENIED AS MOOT.

### CONCLUSION

The court GRANTS Defendants' motion to dismiss [ECF No. 27]. The court DENIES AS MOOT Williams's individual motion to dismiss [ECF No. 46], Williams's motion to sever [ECF No. 47], and iFIT's motion for entry of default against Murdock [ECF No. 50].

---

unlike Williams and Murdock's single letter—led the court to find that the *Oriental Trading* defendants "should have reasonably anticipated being haled into court" in the forum. *Id.*

DATED February 22, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge